IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| **MARION WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.: GLS-18-cv-03707** |
| | ) | |
| | ) | |
| **MONTGOMERY COUNTY MARYLAND** | ) | |
| **et al.,** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

Pending before this Court is the "Motion to Dismiss Plaintiff's Third Amended Complaint," filed by Defendants Montgomery County ("the County" or "Defendant County"), Michael Nesselt, and Angela Washington ("Defendant Nesselt," "Defendant Washington"). (ECF No. 64).  Plaintiff opposes the motion. The parties have fully briefed the issues. (ECF Nos. 64, 67, 72 ). This Court finds that no hearing is necessary. *See* Local Rule (L.R.) 105.6.  As set forth more fully herein, Defendant's motion is **GRANTED**.

**I.     BACKGROUND**

A.  Procedural Background

On December 1, 2018, Plaintiff filed a Complaint in this Court against Defendant County and the Montgomery County Department of Transportation ("MCDOT"), advancing state and federal due process claims and state tort claims. (ECF No. 1). Plaintiff, a former bus driver for Montgomery County's Ride-On bus system, alleged that he was wrongfully dismissed without adequate due process related to the administrative process that led to his termination. (*Id.*).

In December 2018 and May 2019, Plaintiff filed an Amended Complaint later followed by a Second Amended Complaint. In these subsequent complaints, he added claims of race discrimination, age discrimination, and unlawful retaliation in violation of county, state and federal laws. (ECF Nos. 7, 30, 40). The Second Amended Complaint had a total of twelve counts. (ECF No. 40). The gravamen of his Second Amended Complaint was that after baseless complaints were made that he had sexually harassed bus passengers, he was wrongfully terminated. He asserted that he was terminated because of his race and in retaliation for racial discrimination complaints that he made, and that he was subject to a hostile work environment.  Plaintiff also challenged the administrative process that led to his dismissal, claiming that he was denied the full array of procedural and substantive due process rights. (*Id*.).

On June 4, 2019, Defendant Montgomery County filed a "Motion to Dismiss Plaintiff's Second Amended Complaint," for failure to state a claim and lack of jurisdiction, which was fully briefed. (ECF Nos. 41, 42, 49, 50). In addition, Plaintiff filed two correspondences that this Court construed as a motion to amend the Second Amended Complaint. (ECF Nos. 47, 52). On December 9, 2019, this Court scheduled a hearing. (ECF No. 53).

On December 20, 2019, this Court conducted the motions hearing. This Court granted in part and denied in part Defendants' motion, dismissing all counts but three. (ECF Nos. 56, 57). In addition, the Court allowed Plaintiff to amend the three remaining counts: violation of  his due process rights under the 14th Amendment (Count I); defamation (Count III); and false light/invasion of privacy (Count IV). However, this Court set specific parameters for the amendments. Plaintiff would be allowed to amend the defamation and false light claims **only** as to

what I called "Buckets 1, 2, & 5,"[1] which involved the alleged conduct of **only** Defendant Nesselt or Defendant Washington on three 2018 dates: (1) February 17, 2018 (Defendant Nesselt's statements to Robert Sawyer); (2) In or about February of 2018 (Defendant Nesselt's statements to bus drivers); and (3) an unspecified date in 2018 (Defendant Washington's statements to parents). (ECF No. 57; ECF No. 60, pp. 57-67). In other words, the amendments were to give Defendants notice of the dates that the purported defamatory and false statements were made by **Defendant Nesselt and Defendant Washington** (*Id.*)(emphasis supplied). In addition, with respect to Count I, Plaintiff would be allowed one final opportunity to more clearly articulate the facts for what he called his "Section 1983/14th Amendment due process" claim, which was **only** against **Defendant County**, and pertained only to its actions for the period of time before he was fired up and until the time that the Merit System Protection Board issued its adverse decision. (ECF Nos. 57, 60, p. 141) (emphasis supplied). This Court did not find that Plaintiff could make any other amendments. (ECF No. 60, p. 70).

On January 31, 2020, Plaintiff filed his Third Amended Complaint. (ECF No. 59). The Third Amended Complaint asserts three causes of action: violation of his due process rights under the 14th Amendment (Count I), against Defendants Montgomery County, Nesselt, and Washington; defamation (Count II), against Defendants Nesselt, Washington, and Montgomery County; and false light/invasion of privacy (Count III), against Defendants Nesselt, Washington, and Montgomery County.

---

[1] During the hearing, this Court divided each of the allegedly defamatory/false statements into five different "buckets." This Court only allowed Plaintiff to amend with specificity as to three of the five "buckets." (ECF Nos. 57; 60, pp. 57 – 73).

Plaintiff partially complied with the Court's December 2019 Order by adding additional allegations related to Defendants Nesselt and Washington for the defamation and false light/invasion of privacy counts. (Third Amended Complaint, ¶¶ 40-54). However, he also violated that Order in two respects. First, he amended Count I to raise a new theory of alleged 14th Amendment violations committed by Defendants Nesselt and Washington. (*Id.*, ¶¶ 62, 65). According to Plaintiff, the pre-termination investigation was done with malice, lacked diligence, was arbitrary, and "Defendants Montgomery County, Michael Nesselt, and Angela Washington failed to follow the required County procedures before firing [him]." This conduct allegedly violated his "substantive and procedural" due process rights. (*Id.*, ¶¶ 23, 65, 75). Second, he appears to try to also name Montgomery County as a defendant to the defamation and false light counts. (*Id.*, ¶¶ 80, 81, 87).

On February 24, 2020, Defendants filed the motion to dismiss (the "Dismissal Motion") now pending before the Court. Plaintiff subsequently filed his opposition, to which Defendants replied. (ECF Nos. 64, 67, 72).

B.  Third Amended Complaint: Factual Background[2]

1.  *Sexual Harassment Allegations: Pre-termination Process*

Plaintiff was employed as a bus driver for the Montgomery County Ride-On Bus System. (Third Amended Complaint, ¶ 9). In July 2016, Plaintiff had a meeting with Michael Nesselt, his depot chief. There was no Union representative present at the meeting. During the meeting,

---

[2] Per the December 2019 Order, only certain facts remain relevant: those related to the due process allegations and defamatory/false statements. The facts herein are taken from: the Third Amended Complaint; the joint submission filed by the parties prior to the December 2019 Motions Hearing; and excerpts of the Collective Bargaining Agreement. (ECF Nos. 55-1, 55-2, 55-3, 59, 64-6). This is because Plaintiff has referred extensively to the administrative proceedings below in the Third Amended Complaint, these documents are integral to the complaint, and there is no dispute about what the documents show, and there is no question raised about their authenticity. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). The facts are construed in the light most favorable to the non-moving party, Plaintiff. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Michael Nesselt told Plaintiff that someone had made a complaint that he had sexually harassed a minor. (*Id*., ¶ 66). Thereafter, on August 5, 2016, the Montgomery County Department of Transportation ("MCDOT") placed Plaintiff on administrative leave pending investigation of allegations that he sexually harassed a minor. Specifically, while in uniform, Plaintiff allegedly sexually harassed a minor by making inappropriate comments, giving her his phone number, and suggesting that he and the minor "go on a date." (*Id*., ¶¶ 18, 21-22).

Apparently, Plaintiff had been accused of other acts of sexual harassment over the years involving different individuals. One of those incidents reportedly involved showing a photo of his genitalia to a bus patron. (Third Amended Complaint, ¶ 35).

After being put on administrative leave in August 2016, Plaintiff was told that he could contact, Michael Nesselt ("Nesselt"), if he had questions regarding the allegations. (*Id*., ¶ 19). Plaintiff claims that he was forced to attend two meetings (July 2016, September 2016)[3] without a Union Representative. After one of those meeting, Defendant Nesslet is accused of using a racial slur when describing what was going to happen to Plaintiff's administrative action. (*Id*. ¶¶ 66, 68, 71).

In September 2016, Plaintiff met with Nesselt, Angela Washington, a Montgomery County Human Resources representative, and a Union Shop Steward. During that meeting, the Union Steward said that a video of the alleged incident existed, but it purportedly did not show any sexual harassment by Plaintiff. (*Id*., ¶¶ 67-68).

Thereafter, on September 27, 2016, Angela Washington ("Washington") wrote a memorandum to Al Roshdieh, the Director of MCDOT related to the sexual harassment complaint

---

[3] Defendant Nesselt called the July 2016 meeting. Both Defendants Nesselt and Washington were present at the September 2016 meeting. After the second meeting, Defendant Nesselt told Plaintiff that he was going to be terminated; Nesselt also used a racial slur. (Third Amended Complaint, ¶¶ 66, 68, 71).

filed against Plaintiff. In the memorandum, Washington stated that a Ride-On Bus patron complained that Plaintiff had sexually harassed her minor child. (*Id.*, ¶ 20).[4]

On November 16, 2016, the County issued Plaintiff a Notice of Disciplinary Action pursuant to Section 33-6(c) of the Montgomery County Personnel Regulations 2001. (*Id.*, ¶ 24). In December 2016, Plaintiff met again with Washington and others. According to Plaintiff, he was not shown the video during that meeting, nor was he told the identity of the minor. (*Id.*, ¶¶ 72-73).

On December 1, 2016, Director Roshdieh issued a Notice of Action-Dismissal to Plaintiff, which was effective on December 21, 2016. (*Id.*, ¶ 25).

### 2.  *Merit System Protection Board Hearing*

Instead of electing to participate in ADR, Plaintiff appealed his dismissal to the Merit System Protection Board ("MSPB") (ECF No. 59, ¶ 26). The MSPB Hearing occurred on June 21, 2017. (*Id.*, ¶ 26, 28; ECF No. 55-3). During the Hearing, Plaintiff was represented by counsel. (ECF No. 55-3). Plaintiff's Third Amended Complaint suggests that some of Montgomery County's conduct at the hearing was improper: (a) Defendant County did not introduced any admissible evidence that would support that Plaintiff sexually harassed the minor patron, nor were there any witnesses who provided direct testimony of Plaintiff's sexual harassment of the minor; (b) Defendant County provided a video of the purported harassment; however, the video showed Plaintiff speaking to a group of bus patrons at the bus stop while waiting for the bus; (c) No witnesses who testified at the hearing identified the alleged minor victim; and (d) the County also alleged that Plaintiff sent nude photos to a bus patron via cellphone; however, the County did not produce the photos. (*Id.*, ¶¶ 28, 29, 35).[5]

---

[4] At some unspecified point in time, Defendant Washington "threatened Plaintiff that he was being investigated by Montgomery County Police for the alleged incidents." (Third Complaint, ¶27).

[5] *See* Section III.A., *infra.*

On December 4, 2017, the Merit System's Board issued a final decision in favor of the County. (ECF No. 59, ¶ 28). The Board also found that Plaintiff did not violate his "Last Chance Agreement" or the Collective Bargaining Agreement ("CBA"). (*Id.*, ¶ 37). Ultimately, the MSPB also found that Defendant County's termination of Plaintiff was consistent with Montgomery County Personnel Regulations and the law. (ECF No. 55-2).

The Third Amended Complaint contains no other factual averments related to specific acts undertaken by Defendants Nesselt and Washington as Montgomery County employees participating in part of the pre-termination administrative process

### 3.   Statements Made by Defendants Nesselt and Washington

Plaintiff, a former World Championship Boxer, worked at Mushin Gym as a boxing trainer for children. (Third Amended Complaint, ¶¶ 40, 53). On or about February 17, 2018, Defendants Nesselt and Washington went to the Mushin Gym to speak with Plaintiff, however, he was not there when they arrived. (*Id.*, ¶¶ 40 41). The Defendants asked Robert Sawyer, co-owner of Mushin Gym, and Michael Pryor, Plaintiff's training colleague, whether they were aware of any complaints that had been lodged against Plaintiff. (*Id.*, ¶ 44).[6] Pryor answered in the negative. (*Id.*, ¶ 44). Defendant Nesselt told Sawyer that there were nude pictures of Plaintiff on the bus. In addition, in front of the kids who were present at the gym, Defendant Nesselt told Sawyer "we don't want Mr. Wilson being around these kids." (*Id.*, ¶ 45).

At some unidentified time, Defendants told some children's parents that Plaintiff had been caught nude on the bus. (*Id.*, ¶ 48). Furthermore, the owner of the premises ordered Plaintiff and Sawyer to leave the premises due to the allegations Defendants made about the Plaintiff. (*Id.*, ¶

---

[6] Pryor and Sawyer were under the belief that Defendants Nesselt and Washington were Montgomery County Police Officers. (Third Amended Complaint, ¶¶ 42-43). Defendant Washington identified herself to Sawyer as the "Equal Rights lady." (*Id.*, ¶ 46).

49).  As a result of the Defendants' February 17 visit, gym members stopped going to the gym (*Id.*, ¶ 48).

In or about March 2018, Defendant Washington told parents of child gym members that there were nude photos of Plaintiff taken on the bus. (*Id.*, ¶ 50). In addition, Defendant Washington told two other parents either that Plaintiff was caught in the nude on the bus, or that he sexually harassed a minor. These statements led to the parents withdrawing their children from Mushin Gym. (*Id.*, ¶ 51).

In or about March 2018, Defendant Nesselt told three Montgomery County Ride-On bus drivers about nude photos taken of Plaintiff on the bus. (*Id.*, ¶ 54).

The Third Amended Complaint does not contain any allegations that Montgomery County knew of or sanctioned the allegations of Defendants Nesselt or Washington featured in Counts II-III.

## II.    STANDARD OF REVIEW

When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it is asserting that, even if you construe the facts in the Plaintiff's complaint in the light most favorable to him, that complaint fails, as a matter of law, to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must set forth enough facts as to suggest a "cognizable cause of action"). Courts look to the pleading requirements of Fed. R. Civ. P. 8(a)(2), which specifies that a "short and plain statement of the claim showing that the pleader is entitled to relief" is required.

To survive a motion to dismiss, a complaint must have sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-56. A claim "has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It is essential to keep in mind that "' naked assertions' of wrongdoing" are generally insufficient to state a claim for relief." *Francis v. Giacomelli*, 558 F.3d 186, 194 (4th Cir. 2009)(citation omitted). Fed. R.Civ. P. 8(a)(2) demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555-56.

In general, when resolving a Rule 12(b)(6) motion, a court does not usually "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)(quotation marks and citation omitted). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)(en banc).

In general, when a motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), a court cannot consider documents outside of the pleadings to resolve factual disputes. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may consider jointly submitted documents attached to a motion to dismiss, "so long as they are integral to the complaint," *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), and  there is no dispute about the authenticity of the documents. *Pasternak & Fidis P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F.Supp.3d 886, 894 (D.Md. 2015); *see also Brennan v. Deluxe Corp.,* 361 F. Supp. 3d 494, 501 (D.Md. 2019)(explaining that under narrow circumstances viewing extrinsic materials does not convert a motion to dismiss to motion for summary judgment).

## III.     DISCUSSION

A. <u>Integral Documents</u>

In the instant case, the parties filed a "Joint Submission of Documents for Motions Hearing," ECF Nos. 55-1, 55-2, 55-3. These are: (1) Notice of Administrative Leave Pending Investigation, dated August 5, 2016[7]; (2) Statement of Charges-Dismissal, dated November 16, 2016; (3) appeal to the MSPB; (4) Notice of Disciplinary Action-Dismissal, dated December 1, 2016; (5) Final Decision and Order- MSPB; and (6) Transcript of the June 2017 MSPB hearing. The Court considered these before the December 2019 hearing. In addition, Plaintiff referred to the CBA in the Amended Complaint. (ECF No. 59, ¶24). Defendants included excerpts from the CBA as an exhibit to its Dismissal Motion, (ECF No. 64-6), and the Plaintiff cites to the CBA in his response to the Dismissal Motion. (ECF No. 67).

Neither party contests the authenticity of the documents generated in connection with the MSPB Hearing, or of the CBA excerpts. Neither party contests the accuracy of what is set forth in ECF Nos. 55-1 through 55-3. What is relevant here is that the Third Amended Complaint seemingly alleges wrongdoing by Defendant County both during the pre-termination process and at the MSPB Hearing. Yet, the Third Amended Complaint does not fully set forth all of the evidence introduced by Defendant County at the MSPB hearing, and omits key details related to the MSPB's findings based on that evidence. (*See* ECF No. 55-2, pp. 3-11; 12-13, 27).

It is through that lens that the Court conducts its analysis.  I find that ECF Nos. 55-1 through 55-3 and 64-6 are integral to the Third Amended Complaint to the extent that they touch upon Defendant County's conduct during the pre-termination process.  I find that they are integral to the Third Amended Complaint. Therefore, the Court may consider them.

---

[7] Page 2 of this document is missing. Defendants attached page 2 as an exhibit to their "Motion to Dismiss Plaintiff's Third Amended Complaint." *See* ECF No. 64-4.

If Plaintiff seeks to challenge Defendant County's conduct at the MSPB hearing, the Court finds that the Third Amended Complaint fails to sufficiently plead the fullness of what transpired at the hearing.  Accordingly, Plaintiff has not met his burden under Fed. R. Civ. P. 8(a).

B.  <u>Count I: Due Process Violation</u>

The Fourteenth Amendment provides that no State shall not deprive any person of life, liberty, or property, without due process of law. U.S. CONST., amend. XIV. "The Fourteenth Amendment does not itself create property rights but rather affords a protection to them." *Linton v. Frederick County Bd. Of County 15 Com'rs*., 964 F.2d 1436, 1438 (4th Cir. 1992) It is well-established that to satisfy the procedural due process requirement of the Fourteenth Amendment, the government must provide **notice and meaningful opportunity to respond or be heard**. *Id*. (emphasis added).

A public employee with a property interest in continued employment must receive a notice prior to termination. *Linton, supra,* at 1438 (quoting *Cleveland Bd. Of Educ. v. Loudermill*, 470, U.S. 532, 546, (1985))(emphasis added). Oral **or** written notice is acceptable when the employer provides the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his or her side of the story. *Id*. at 1439 (citation omitted). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee. *Loudermill, supra*, at 546. The purpose of the pre-termination process is to act as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermiall,* at 545-46.

As is relevant here, Plaintiff alleges that Defendants Montgomery County, Washington and Nesselt deprived him of his procedural and substantive due process rights during the pre-

termination process. Plaintiff claims generally that all three Defendants "failed to follow the required County procedures before firing him." (Third Amended Complaint, ¶ 65). Plaintiff alleges: (1) he was forced to attend two meetings (July 2016, September 2016) without a Union Representative, in violation of the CBA; (2) Defendants failed to provide specifics about the identity of Plaintiff's accusers; (3) there was no complaint number for his "case coming from Central Office;" (4) Plaintiff was never given access to the video related to the 2016 complaint, yet a Union Shop steward saw the video and found that there was "no sexual harassment at all;" and (4) Defendants failed to provide the alleged nude photos of Plaintiff. (Third Amended Complaint, ¶¶ 23, 65-77). Ultimately, Plaintiff alleges that there was no reasonable justification for his termination, and his firing was "steeped in malice." (*Id*., ¶ 38-39).

This Court must construe the evidence in the light most favorable to the Plaintiff. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). To survive a motion to dismiss, this Court must find that Defendants failed to provide **sufficient** oral or written notice to Plaintiff prior to his termination. Relatedly, this Court must find that Defendants failed to provide Plaintiff meaningful opportunity to present his side of the story prior to termination.

### 1. Due Process Violations

In their motion to dismiss, Defendants assert that no due process violations occurred. Specifically: (1) this Court is not the proper forum for redress of an alleged CBA violation; regardless, there was no CBA violation; (2) the record reflects that Plaintiff was given the requisite notice and opportunity to be heard; and (3) Plaintiff is not entitled to know the minor's full identity, nor is he entitled to confront any witnesses; and (4) Plaintiff is not necessarily entitled to view the videotape or the alleged nude photos. (ECF Nos. 64-1, pp. 10-14).

Urging against dismissal, Plaintiff argues that: (1) Defendant County did not explain all of the evidence against him (i.e., he was not told the full identity of the 14-year-old minor complainant); (2) he was never shown the videotape of the 14-year-old minor to allow him to respond before the MSPB hearing; (3) he was never shown any of the alleged nude photos. All of these actions deprived him of his "procedural and substantive due process rights). (ECF No. 67, pp. 3-4, 7-10).  Regarding the CBA, Plaintiff asserts that Defendant County violated the it by, *inter alia*: (a) not putting a case number on his case; (b) not allowing a Union representative to be present at certain meetings. (*Id.*, pp. 5-7). In support of his arguments, Plaintiff cites to *Curtis v. Montgomery Cty. Pub. Schs.*, 242 F. App'x 109 (4th Cir. 2007); *Doe v. Alger*, 175 F.Supp.3d 646 (W.D. Va. Mar. 31, 2016); and *Consolidation Coal Co. v. Borda*, 171 F.3d 175 (4th Cir. 1999) (ECF No. 67).

In their reply, Defendant maintain that Plaintiff received notice, an explanation of the charges and an opportunity to be heard. In addition, under *Loudermill* an employer is not required to provide the identity of the minor, video, or any photographs. (*Id.*) Moreover, Plaintiff's allegations related to the CBA do rise to the level of a federal due process violation. (ECF No. 72).

As a preliminary matter, this Court has construed Plaintiff's allegations related to learning the full identity of the minor and the opportunity to view the video tape as pertaining to the pre-termination process engaged in by Defendant County, and not what transpired at the MSPB Hearing. As I stated earlier, Plaintiff's Third Amended Complaint does not fully capture what transpired at the MSPB hearing, including, e.g., the fact that the videotape appears to have been shown at that hearing, and there was a significant amount of information provided to Plaintiff and his counsel at that time. (*See*  ECF Nos. 55-2, 55-3).

This Court finds *Linton, supra*, to be instructive. In *Linton,* the defendants provided a "Notice of Dismissal" to the plaintiff, which he gave plaintiff the option to either resign or be fired. The plaintiff requested time to discuss the issues with his family. The defendants gave plaintiff one day to decide. The next day plaintiff refused to resign, and the defendant fired him. The plaintiff argued that his procedural due process rights were violated because: (1) the notice of dismissal was general; (2) the notice failed to provide basic facts of the allegations; (3) the notice failed to outline the evidence that supports the dismissal; and (4) plaintiff did not have an opportunity to respond to the allegations. 964 F.2d at 1436-37.

The *Linton* court held that oral or written notice must be provided to an employee prior to termination and must outline the charges against the employee, explain the employer's evidence, and provide the employee an opportunity to present his side of the story. *Id*. at 1439 (citing *Loudermill*, *supra*, at 546). The *Linton* court found that the "Notice of Dismissal" provided a sufficient explanation that would permit the plaintiff to identify the conduct giving rise to the dismissal and thereby to enable him to respond. *Id.* at 1440. Therefore, the *Linton* court held that the plaintiff received sufficient pre-termination notice and a meaningful opportunity to respond. *Id*. at 1441.

In the instant case, in reviewing the material documents, Plaintiff received notice of the allegations involving the 14-year-old minor, and of the investigation in August 2016, which was four months prior to his effective termination date (December 2016). That notice placed him on administrative leave, and notified him that he could contact Defendant Nesselt if he had any questions. In September 2016, Defendant Washington authored a memorandum, which detailed further the allegations related to the minor, another bus patron and others. In July 2016 and

September 2016, Plaintiff attended two meeting where information about the allegations was shared with him. (Third Amended Complaint, ¶¶ 18-25, 65-68).

Following the conclusion of the investigation, in November 2016, Defendant County issued a detailed statement of charges, which set forth the details of the complaint surrounding his sexual harassment of the 14 year-old minor. In the Notice, the Defendants listed twelve charges as the basis of Plaintiff's dismissal. The Notice detailed the entire investigation history, including providing the statements made by the victim and various witnesses, as well as descriptions of the video and nude photographs. (ECF No. 64-4; *see also* ECF No. 55-1, pp. 18, 20). Plaintiff was told that he could respond, in writing or in-person to his supervisor, within ten (10) days **before any final action** occurred. (ECF No. 64-4)(emphasis added). Also, Plaintiff was told that a Union representative may request a Pre-Discipline Settlement Conference on his behalf. Plaintiff expressly declined in writing to participate in any alternative dispute resolution. (ECF No. 64-8). Plaintiff decided instead to utilize his post-termination rights, and  appeal the termination decision to the Merit Systems Protection Board. (*Id*.). At the MSPB hearing, Plaintiff was represented by counsel, and afforded a full hearing, including the viewing of the videotape, exhibits presented by Defendant County.

 As the *Linton* court held, an employer is not required to provide all types of evidence related to the charges against the employee so long as there is a sufficient explanation of the charges, such that a plaintiff can respond. *Linton, supra*, at 1440. In this case, the evidence provided to Plaintiff enabled him to: identify the conduct giving rise to the dismissal. He was provided with: (1) times and dates of the alleged incidents; (2) the locations; (3) the alleged minor victim's age and gender; (4) a transcript of the text messages exchanged between the minor victim and her relative; and (5) a copy of full complaint articulated by the mother of the 14-year-old minor

(ECF Nos. 64-4, 64-5, 65-6; *see also* ECF No. 55-2). In addition, the documents describe the nude photos in detail. (*Id*.).

Regarding the amount of time that Plaintiff was given to respond, Plaintiff received a meaningful opportunity to respond upon first receiving the information in or about August 2016, and again in November 2016. This Court finds that Plaintiff had a sufficient amount of time to respond to the allegations. In contrast, the *Linton* plaintiff was given less than 24 hours to determine whether to resign or allow termination. *Linton,* at 1440.

Regarding the lack of a complaint number being assigned to the case, Plaintiff fails to persuasively argue the significance of this fact.

In addition, Plaintiff is not entitled to "confront" any victims or witnesses because government employees do not receive the same rights as criminal defendants during this administrative process. *Riccio v. City of Fairfax*, 907 F. 2d 1459, 1465 (4th Cir. 1990)(holding that "a government employee facing possible termination simply is not entitled to all rights of a criminal defendant."). Put another way, courts have held that a claimant's inability to confront a witness, and view all of the evidence at the pre-termination stage does not violate the claimant's due process rights. *See Linton*, *supra* , at 1440; *Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1283, n.7 (4th Cir. 1995).

Plaintiff's reliance on *Curtis, Doe,* and *Borda* is inapposite. *See Curtis*, 242 F. App'x at 109(no due process violation where plaintiff did not receive notice of all possible disciplinary outcomes; plaintiff was told he was the subject of the investigation, that he was suspended, and he was given opportunity to engage in the pre-termination process); *Doe*, 175 F.Supp.3d at 646(adequacy of process at the appellate stage of a student disciplinary proceeding); *Borda*, 171 F.3d at 177(failure to timely notify concerning claim about black lung disease). Here, Plaintiff fails

16

to plausibly and clearly allege how he was not given meaningful opportunity to respond before November 2016, had he chosen to do so.

Regarding the CBA, federal procedural due process requires notice and a meaningful opportunity to be heard. The out-of-district case cited by Plaintiff, *Walls v. Cent. Contra Costa Transit Auth.*, No. C 08-0224 PJH, 2012 U.S. Dist. LEXIS 22076 (N.D. Cal. Feb. 22. 2012), stands for this proposition. Federal procedural due process does not guarantee representation of a Union Representative during the pre-termination process. Nor does federal due process require the Court to adopt state and local procedures that requires more than providing notice and a meaningful opportunity to be heard. *See Riccio v. City of Fairfax*, 907 F. 2d 1459, 1468-69 (4th Cir. 1990)(holding that "alleged violations of due process in the deprivation of the protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures"). Even assuming, *arguendo*, that two meetings occurred without a Union representative being present, Plaintiff fails to sufficiently plead how this translated into a true deprivation of federal due process.[8]

The Court finds that Plaintiff received sufficient notice during the pre-termination process. In short, the dismissal followed: being placed on administrative leave pending an investigation; meetings; an investigation; and issuance of a statement of charges, and more than one opportunity to be heard before the termination decision became final. *Loudermill* does not require the pre-termination process to be more elaborate than notice, an explanation of the charges, and an opportunity to be heard. 470 U.S. at 545-46. In sum, Count I fails to state a claim for relief as it

---

[8] In addition, the Court reviewed the CBA excerpts. According to the CBA Preamble, a grievance procedure is available. (ECF No. 64-6). Plaintiff did not take advantage of this grievance procedure.

relates to Defendant Montgomery County. The motion to dismiss as to Count I and Defendant Montgomery County is GRANTED.

2.  *Due Process Claim against Defendants Nesselt and Washington*

In Count I, Plaintiff alleges that Defendants Nesselt and Washington, in their individual capacities, violated his due process rights. (Third Amended Complaint, ¶ 62). In his opposition to the motion to dismiss, Plaintiff argues that Defendant Nesselt, as Depot Chief, "was in a position to ensure the provision of a hearing to Wilson and was an ultimate decisionmaker, and his comment "we are going to terminate you [racial slur]" "shows that he was an ultimate decisionmaker." (ECF No. 67, p. 11). In addition, Defendant Nesselt's participation in meetings without a Union representative makes "Nesslet [liable] for violation of due process safeguards during the termination process." (*Id.*). Regarding Washington, Plaintiff avers in his opposition that "she was the "ultimate decisionmaker with regards to the investigation of the allegations and the decision to terminate [Plaintiff]." Plaintiff also argues in his opposition that Defendant Washington was the "[EEOC Officer] tasked with investigating the allegations against Wilson and ensuring that the due process safeguards enshrined in the Maryland constitution and fourteenth amendment where (sic) protected." (*Id.*).

This Court finds that Plaintiff fails to allege sufficient facts in his Third Amended Complaint such that it can plausibly infer that Defendants were decisionmakers. The Third Amended Complaint does identify Defendant Nesselt as a point of contact; a convener of one meeting without a Union representative and a participant in other; and the utterer of a racially derogatory term in connection with "we are going to terminate you." However, the Third Amended Complaint fails to cogently offer facts from which the Court can infer that Defendant Nesselt was a decisionmaker, rather than a participant. Nor does the complaint articulate how failing to have a

Union representative at a meeting constitutes a due process violation. Regarding Defendant Washington, the Third Amended Complaint sets forth no facts to demonstrate that she was a decisionmaker, rather than an investigator of the allegations and the author of a memorandum. *See Garraghty, supra*, 52 F.3d at 1280 ("only persons who can be liable for a denial of due process are those in a position to provide constitutionally adequate process").

In short, the Third Amended Complaint fail to show how Defendants Nesselt and Washington acted personally to deprive Plaintiff of his right to continued employment. Accordingly, dismissal against Defendants Nesselt and Washington in proper. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

Finally, to the extent that the Third Amended Complaint alleges that Defendants Nesselt and Washington failed to provide Plaintiff with the nude photos, videotape of the 14-year-old minor, and information about the identity of the minor and her complainant parent,  Plaintiff fails to articulate how these actions amount to due process violations, in light of the notice and opportunity to be heard that Plaintiff did receive.

In sum, Count I fails to state a claim for relief as it relates to Defendants Nesselt and Washington. The motion to dismiss as to Count I and these Defendants is GRANTED.

    C.   <u>Counts II & III: Defamation and False Light/Invasion of Privacy</u>

        *1.  Defendants Washington and Nesselt*

Defendants maintain that the revisions found in the Third Amended Complaint exceed this Court's Order. (ECF No. 72, p. 12). First, Defendants contend that Plaintiff alleges for the **first time** that Defendants Nesselt and Washington both met with Robert Sawyer. (ECF No. 72, p. 12) (*Compare* Third Amended Complaint, ¶40, *with*  ECF No. 40, ¶ 37).  Second, Defendants maintain that Plaintiff exceeded the Court's Order when he amended the date of occurrence in which

Defendant Nesselt allegedly made defamatory statements about Plaintiff to the other bus drivers. (ECF No. 72, p. 12). Third, Defendants aver that Plaintiff impermissibly pleads two new defamatory statements related to: (1) Defendant Nesselt telling the parents of Mushin Gym student members that Plaintiff was caught nude on the bus; and (2) Defendant Washington making defamatory statements about Plaintiff to children's parents of Mushin Gym on a second occasion. (ECF No. 72, pp. 12-13; *see also* ECF No. 59 at ¶¶ 48, 51).

Plaintiff counters that Defendants' arguments lack merit because each of the contested paragraphs merely adds particularity. (ECF No. 67, pp.17-19).

The Court ultimately agrees with Plaintiff. The Court finds that the Third Amended Complaint does set forth additional facts related to the three 2018 allegedly-defamatory acts that were not set forth in the Second Amended Complaint.  However, the amendments do particularize the facts without offering any materially different legal theories. Defendants previously had notice of the basic facts of the allegedly defamatory statements: what has changed are one date and a participant.  There is no prejudice to Defendants; indeed, discovery has not ended.

### 2. *Defendant Montgomery County & Governmental Immunity*

Defendants argue that Defendant County cannot be liable for the conduct of Defendants Nesselt and Washington because Plaintiff conceded that their conduct was outside of their employment. In the alternative, Defendants argue that governmental immunity shields Defendant County from liability. (ECF No. 64, pp. 17-20).

Plaintiff maintains that governmental immunity does not protect Defendant County for reasons that are, regrettably, unclear to the Court. (ECF No. 67, pp. 19-20). Plaintiff argues that "the county is liable for the actions of Nesselt and Washington because they were [Defendant]

County's employees, and the county would be liable for the tortious actions undertaken by them subsequent to his employment." (ECF No. 67, p. 19).

It is well-settled law that an employer is vicariously liable for the tortious acts committed by an employee so long as those acts are within the employee's scope of employment. *Nero v. Mosby*, 890 F.3d 106, 121-123 (4th Cir. 2018). However, an employer is not liable for the intentional torts its employee commits because it constitutes an abandonment of employment and is not done in furtherance of the beneficent purposes of the employer. *Id.*

A review of the Third Amended Complaint causes this Court to find that Plaintiff has failed to cogently argue how Defendant County defamed him or invaded his privacy. For example, Count II of the Third Amended Complaint as currently drafted contains contradictory allegations. In one paragraph, Plaintiff alleges that Defendants Nesselt and Washington acted outside of the scope of their employment—and "not in furtherance of the county's business"-- when they "slandered" Plaintiff. (Third Amended Complaint, ¶ 82). Yet, in another he seems to be averring that Defendant County defamed him by repeating statements that a patron had made, or that were made by Defendants Nesselt and Washington. (*Id.*, ¶ 81). Next. within another paragraph contained in Count III, Plaintiff first alleges that all Defendants are liable to him, but then he alleges that Defendants Nesselt and Washington were acting outside of the scope of their employment. (*Id.*, ¶ 89).

Fed. R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff has failed to meet his pleading burden. As pled, Counts II and III only set forth claims of conduct of Defendants Washington and Nesselt only. There is no cogent allegation of Defendant County's role.

Accordingly, Defendant County's motion to dismiss Counts II-III as it pertains to it will be GRANTED.

## IV.     SUPPLEMENTAL JURISDICTION OVER COUNTS II AND III

Because this Court has dismissed Count I, the only remaining claims involve violations of Maryland law: Counts II and III, related to Defendants Nesselt and Washington. This Court, in its discretion, declines to exercise supplemental jurisdiction over these remaining state law claims. *See* 28 U.S.C. §1367(c) ("[A]district court[s] may decline to exercise supplemental jurisdiction over a claim. . . if. . . the district court has dismissed all claims over which it has original jurisdiction. . . ."); *see also Hall v. Prince George's County*, 189 F.Supp.2d 320, 324 (D. Md. 2002)(dismissing remaining state law claims without prejudice as a result of the dismissal of the federal claims).

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. Count I against Defendants County, Nesselt, and Washington are **DISMISSED WITH PREJUDICE**. The Court also dismisses Counts II-III against Defendant Montgomery County **WITHOUT PREJUDICE.**

This Court declines to exercise supplemental jurisdiction over Counts II-III against Defendants Nesselt and Washington. Accordingly, Counts II-III are **DISMISSED WITHOUT PREJUDICE.**

The Clerk of the Court is directed to close the case.

Dated:  September 15, 2020                                    _____/s/_____
                                                             The Honorable Gina L. Simms
                                                             United States Magistrate Judge